429 So.2d 797 (1983)
Samuel SLOMOWITZ and Ruth Slomowitz, N/K/a Ruth Vogel, Appellants,
v.
E.O. WALKER and Geneva Walker, N/K/a Geneva Stevens, Appellees.
No. 82-797.
District Court of Appeal of Florida, Fourth District.
April 13, 1983.
*798 David F. Holmes of Braverman & Holmes, Fort Lauderdale, for appellants.
John R. Gillespie, Jr., of Gillespie, McCormick, McFall, Gilbert & McGee, Pompano Beach, for appellees.
DELL, Judge.
Samuel and Ruth Slomowitz appeal from a $2,400 final judgment against Geneva Walker, which was entered following the trial court's order setting aside a much larger 1969 final judgment entered against Geneva Walker and her former husband, E.O. Walker.
In 1966, fire destroyed a building owned by appellants. Appellants brought suit against E.O. and Geneva Walker, lessees of the premises under a business lease executed in 1965, alleging that the fire resulted from the negligence of the Walkers' agents, servants or employees. The Broward Sheriff's office returned the original summonses directed to E.O. and Geneva Walker unserved because they had moved from 4410 N.E. 6th Avenue in Fort Lauderdale to an unknown address. A Broward deputy sheriff filed returns of process certifying that at different times he served E.O. Walker and Geneva Walker with an alias summons at Walker Tire & Recapping, 4561 N.W. 8th Avenue in Fort Lauderdale. Neither E.O. Walker nor Geneva Walker answered the complaint, and the trial court entered a default judgment against them. A non-jury trial on damages resulted in a $31,193.88 final judgment against E.O. and Geneva Walker on December 31, 1969.
In 1980, after appellants subpoenaed her for a deposition in aid of execution, Geneva Walker moved to set aside the 1969 final judgment. Mrs. Walker contended that the eleven year old final judgment was void due to a lack of personal service of process. Appellants offered a copy of the return of service by a Broward deputy sheriff which indicated service had been made at the Walker Tire and Recapping address at 10:50 A.M. on January 31, 1969. The deputy sheriff had no present recollection of serving Mrs. Walker. Mrs. Walker presented the testimony of Charles Walker, her nephew and the owner of Walker Tire & Recapping. Charles Walker testified that persons came to the Walker Tire premises with subpoenaes for Mrs. Walker, but that to his knowledge Mrs. Walker had never visited Walker Tire because of a disagreement with him. Although Mrs. Walker had no recollection of the date when the sheriff's return indicated service, she testified that she had never received any legal papers until the subpoena for deposition in 1978. Based on this testimony, the trial court set aside the 1969 final judgment against Mrs. Walker for lack of personal jurisdiction. After a non-jury trial, the trial court found appellants had failed to prove negligence, but entered a final judgment against Mrs. Walker in the amount of $2,400 for rent due and owing under the lease at the time of the fire.
Appellants contend that the trial court erred in setting aside the 1969 final judgment for lack of personal service of process on Mrs. Walker, and they also contend that the trial court erred in not finding Mrs. Walker liable for the fire loss due to negligence.
Reasons of public policy require that a sheriff's return of service be held presumptively valid and that a defendant seeking *799 to impeach a sheriff's return must meet a high burden of proof. Florida cases have consistently held that:
To impeach the return of a sheriff, made under the sanction of official oath and responsibility, clear and convincing evidence is required.
Clements Naval Stores Co. v. B. Betts Co., 85 Fla. 49, 95 So. 126 (1923); Golden Gate Development Co. v. Ritchie, 140 Fla. 103, 191 So. 202 (1939); Winky's Inc. v. Francis, 229 So.2d 903 (Fla. 3d DCA 1969).
We recognize that the passage of time and the number of summonses served would naturally dim a process server's recollection of serving a given summons. To permit a defendant to impeach a summons by simply denying service would create chaos in the judicial system. Therefore, evidence must be presented to corroborate the defendant's denial of service.
[A] mere denial by a defendant, unsupported by corroborative evidence or circumstances, is not enough to impeach the return of the official process server... . This is because the affirmative testimony of the official process server acting in the regular routine of duty without a motive to misrepresent must be preferred to the negative evidence of one claiming not to have been served, either for reasons of public policy or as a matter of probability, Sarlouis v. Firemen's Insurance Co., 45 Md. 241, 244 (1876).
Ashe v. Spears, 263 Md. 622, 284 A.2d 207 at 210 (Md. 1971), cert. denied, 406 U.S. 958, 92 S.Ct. 2061, 32 L.Ed.2d 344 (1972). Such corroborating evidence must also meet the standard of clear and convincing evidence.
However, we find ourselves hampered by the lack of a definition of "clear and convincing" in Florida case law. In State v. Graham, 240 So.2d 486 (Fla. 2d DCA 1970), Judge Mann commented on the definitional problem as follows:
Wigmore went to the heart of the matter: "The truth is that no one has yet invented or discovered a mode of measurement for the intensity of human belief." We communicate with words rather than numbers in the legal profession, and this forces us to verbalize standards for the subjective feeling of probability engendered by evidence. Broadly, we say that the measure of persuasion in criminal cases is proof beyond a reasonable doubt, while civil cases require the lesser measure of proof by a preponderance of the evidence. Wigmore, however, recognizes that a "stricter standard, in some such phrase as `clear and convincing proof'" is commonly used to measure the necessary persuasion in certain matters. Florida has recognized this quantum of proof, or variations of it, in a number of instances.
Id. at 490. [Footnotes omitted].
"Clear and convincing" has been defined as evidence making the truth of the facts asserted "highly probable," People v. Taylor, Colo., 618 P.2d 1127, 1136 (Colo. 1980);[1] and E. Cleary, McCormick's Handbook of the Law of Evidence 796 (1972); or "highly probably true," Estate of Ragen, 79 Ill. App.3d 8, 34 Ill.Dec. 523, 398 N.E.2d 198, 203 (Ill. App. 1979); Dacey v. Connecticut Bar Association, 170 Conn. 520, 368 A.2d 125, 134 (Conn. 1976). Clear and convincing evidence will produce in the mind of the fact finder a firm belief or conviction as to the truth of the facts sought to be established. Matter of C.G., 637 P.2d 66, 71 (Okl. 1981).[2] Clear and convincing evidence has also been defined as having a "high capability of inducing belief," Horner v. Flynn, 334 A.2d 194, 199-200 (Me. 1975), leaving "no substantial doubt," People v. *800 Caruso, 68 Cal.2d 183, 65 Cal. Rptr. 336, 436 P.2d 336, 341 (Cal. 1968), "sufficient to convince ordinarily prudent minded people," Rowland v. Holt, 253 Ky. 718, 70 S.W.2d 5, 9 (Ky. 1934) and to "instantly tilt the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." In Re Sedillo, 84 N.M. 10, 498 P.2d 1353, 1355 (N.M. 1972). Black's Law Dictionary (4th ed. 1968) at 318 defines clear evidence or proof as "evidence which is positive, precise and explicit, which tends directly to establish the point to which it is adduced and is sufficient to make out a prima facie case." More detailed definitions of clear and convincing evidence require:
"[T]he witnesses to a fact must be found to be credible; the facts to which the witnesses testify must be distinctly remembered; the details in connection with the transaction must be narrated exactly and in order; the testimony must be clear, direct and weighty, and the witnesses must be lacking in confusion as to the facts at issue." Modern Air Conditioning, Inc. v. Cinderella Homes, Inc., 226 Kan. 70, 78, 596 P.2d 816, 824 (1979).
Nordstrom v. Miller, 227 Kan. 59, 605 P.2d 545, 552 (Kan. 1980).
[S]uch evidence is that which "produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established," evidence "so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." Aiello v. Knoll Golf Club, 64 N.J. Super. 156, 162, 165 A.2d 531 (App.Div. 1960).
In Re Boardwalk Regency Casino License Application, 180 N.J. Super. 324, 434 A.2d 1111, 1118 (N.J.Super.App.Div. 1981).
Our review of the foregoing cases convinces us that a workable definition of clear and convincing evidence must contain both qualitative and quantitative standards. We therefore hold that clear and convincing evidence requires that the evidence must be found to be credible; the facts to which the witnesses testify must be distinctly remembered; the testimony must be precise and explicit and the witnesses must be lacking in confusion as to the facts in issue. The evidence must be of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established.
Applying this definition of the facts sub judice we find that appellee failed to present sufficient evidence to meet her heavy burden to impeach the sheriff's return. Charles Walker's testimony that to his knowledge Mrs. Walker had never visited the tire shop fails to corroborate Mrs. Walker's denial of service because such testimony does not establish whether Mrs. Walker was or was not at the tire shop when the deputy sheriff certified that he completed service of process. Neither the testimony of Mrs. Walker nor her nephew can be characterized as precise and explicit and distinctly remembered.
Accordingly, we reverse the trial court's order setting aside the 1969 final judgment and remand this cause with instructions to reinstate the 1969 final judgment. We need not address appellant's other issues relating to the subsequent trial on the merits.
REVERSED and REMANDED.
LETTS, C.J., and DOWNEY, J., concur.
NOTES
[1] Also see Weber v. Anderson, 269 N.W.2d 892, 895 (Minn. 1978); Parker v. Parker, 103 R.I. 435, 238 A.2d 57, 60-61 (R.I. 1968); Waks v. State, 375 P.2d 136, 138 (Alaska 1962); and Supove v. Densmoor, 225 Or. 365, 358 P.2d 510, 514 (Or. 1961).
[2] Also see Welton v. Gallagher, 2 Haw. App. 242, 630 P.2d 1077, 1081 (Haw. App. 1981); Middleton v. Johnston, 221 Va. 797, 273 S.E.2d 800, 803 (Va. 1981); State v. Addington, 588 S.W.2d 569, 570 (Tex. 1979); State v. Sahlie, 277 N.W.2d 591, 594 (S.D. 1979); Aiello v. Knoll Golf Club, 64 N.J. Super. 156, 165 A.2d 531, 534 (N.J.Super.App.Div. 1960); and Cross v. Ledford, 161 Ohio St. 469, 120 N.E.2d 118, 123 (Ohio 1954).